Tremble BALL, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 72–1069.

United States Court of Appeals, Sixth Circuit.

June 16, 1972.

&#9758;6

Nelson Lancione, Columbus, Ohio, for plaintiff-appellant.

Robert S. Greenspan, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee; L. Patrick Gray, III, Asst. Atty. Gen., William W. Milligan, U. S. Atty., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on brief.

Before CELEBREZZE and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

This is an appeal from the District Court's entry of judgment for the United States in an action for damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). For the reasons set forth below, we affirm the judgment of the District Court.

During the month of November, 1965, Appellant Ball was employed as a laborer by the Harry Ketterman Company, a general contractor. The Harry Ketterman Company had contracted with the General Services Administration to make repairs to the roof of the Post Office Building in Ashland, Ohio.

On or about November 20, 1965, Appellant and at least one other Ketterman employee were preparing to lift repair materials from the ground to the roof of the Post Office. Appellant was standing on a canopy which extended over an entrance to the building. As the co-employee ascended the ladder to the canopy and was about to step onto it, the canopy collapsed, and Appellant sustained injuries from the resulting fall.

Plaintiff-Appellant brought the present action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), asserting the negligence of the United States, through its agents, in failing to exercise due care for the safety of the plaintiff and in failing to provide the plaintiff a safe place to work as required under O. R.C. § 4101.01, et seq.

As trier of fact, the District Court made the following findings:

1. The United States, through the General Services Administration contracted for roof repairs with the Harry Ketterman Company. These repairs were to be made on the "built-up-roof" of the building and were not in any way connected with the canopy which collapsed.

2. The plaintiff and the other employees of the Harry Ketterman Company were using the canopy for their own convenience in gaining access to the roof. Access to the roof could have been had via a steel ladder anchored to a wall inside the Post Office which led to a hatch opening on to the roof.

3. No employee of the United States directed the Harry Ketterman Company or its employees to use the canopy for access to the roof.

4. The roofing repairs were ultimately completed without using the canopy for access to the roof.

5. The purpose of the canopy which collapsed under the plaintiff's weight was to protect the doorway which it covered from weather.

6. Neither the employees of the United States nor the employees of the Harry Ketterman Company were aware of the weakness which caused the canopy to fall.

7. The canopy consisted of a lumber frame covered by tin. It was held in place and fastened by anchor rods fastened to the building on one end and screwed through the tin and into the wooden framing on the other end. Lag screws were used rather than a bolt and plate arrangement. The canopy fell when the lag screws pulled out of the wooden framing.

From the record before us, we hold that these findings of fact by the District Court were not clearly erroneous.

█ The District Court properly applied this Court's holding in Ford Motor Co. v. Tomlinson, 229 F.2d 873 (6th Cir. 1956), in determining the duty which would be owed to Plaintiff-Appellant by the United States under the Ohio safe-place-to-work statute, O.R.C. §§ 4101.11 and 4101.12:

"The simple fact seems to be that, at least with respect to 'frequenters,' the Ohio appellate courts have not regarded those statutes as exacting a duty substantially different from that imposed generally by Ohio law upon an owner of property towards an invitee." 229 F.2d at 879.

*See also* Westwood v. Thrifty Boy Super Markets, 29 Ohio St.2d 84, 278 N.E.2d 673 (1972). Thus the District Court properly concluded that if O.R.C. §§ 4101.11 and 4101.12 were applicable to the United States in this case, the duty owed to Plaintiff-Appellant thereunder as a "frequenter" [*see* O.R.C. § 4101.-01(E); Popowich v. American Steel & Wire Co., 13 F.2d 381 (6th Cir. 1926)] would be to warn him of defects of which Defendant-Appellee's agents knew or should have known. Moore v. Denune & Pipic, Inc., 26 Ohio St.2d 125, 269 N.E.2d 599 (1971).

From the evidence before it, the District Court found that Defendant-Appellee's agents did not know of the defects in the canopy and could not reasonably have been expected to know the hazard involved in Plaintiff-Appellant's use of the canopy. Nothing in the record suggests that this finding was clearly erroneous.

The judgment of the District Court is therefore affirmed.