Henry YALOWIZER and Shirley
Yalowizer, husband and wife,
Appellants (Plaintiffs),

v.

HUSKY OIL COMPANY, Appellee
(Defendant).

No. 5457.

Supreme Court of Wyoming.

May 28, 1981.

Michael K. Davis and Rex O. Arney, Redle, Yonkee & Arney, Sheridan, signed the brief and Michael K. Davis, Sheridan, appeared in oral argument for appellants.

James W. Owens, Murane & Bostwick, Casper, signed the brief and appeared in oral argument for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

The Yalowizers [1], appellants, as plaintiffs, filed in the district court a complaint against the Husky Oil Company, appellee, as defendant, alleging personal injuries and property damage caused by negligence of the appellee. Following discovery and a pretrial conference, appellee moved for summary judgment. After briefing for and argument to the court, it granted summary judgment for the appellee and against appellants.

The issues as presented by appellants are:

---

1. It has been suggested to the court on the record pursuant to Rule 17.01, W.R.A.P. that Henry Yalowizer, subsequent to docketing of this appeal, has died intestate and no personal representative has been appointed. We will, however, for the purposes of this opinion, consider both Yalowizers as appellants.

1. "Should the Court abolish the common law classifications of trespasser, licensee, and invitee, and establish a uniform standard of reasonable care under the circumstances, allowing these classifications to be considered as factors in the determination of reasonable care?"

2. "Is there a genuine question of material fact as to whether the Appellee knowingly maintained a hidden peril or concealed danger which the Appellant Shirley Yalowizer could not and did not discover, giving rise to liability to the Appellant even as a licensee?"

3. "Is there a genuine question of material fact as to whether the Appellee owed the Appellant Shirley Yalowizer a duty of reasonable care under the doctrine of frequent trespass on a limited area?"

We will affirm.

I

The appellee does not disagree with appellants' version of what occurred and brought about this litigation. On December 28, 1979, the appellants, husband and wife, accompanied by their grandson drove to downtown Sheridan for the purpose of shopping at a shoe store. The store was located a few blocks away from a vacant service station leased by the appellee. The appellants each drove separate vehicles; appellant Henry Yalowizer drove a pickup while appellant Shirley Yalowizer followed in a 1974 Oldsmobile owned by her husband. Mr. Yalowizer parked the vehicle he was driving in the street alongside the service station, then joined his wife in the Oldsmobile. They then continued on to the shoe store.

After taking care of their business at the shoe store, Mrs. Yalowizer returned alongside the pickup and let off her husband. She then turned into the filling station concrete drive intending to drive through in order to short-cut onto the street which intersected the one on which her husband's pickup was parked. She was traveling at a slow rate of speed. The vehicle, without warning, came to a sudden halt, throwing Mrs. Yalowizer against the windshield,

causing injury to her neck and cutting her head. The vehicle was also damaged.

The sudden stop resulted from the slippage of a steel plate which had been placed in the service station's driveway covering a pit in which valves, used in connection with underground gasoline storage tanks, had been located. The plate's fasteners apparently came loose from their recesses and flipped up when the car's front wheel went over it, causing the wheel to drop into the 24" long by 18" wide by 6" deep hole intended to be covered by the plate.

A former lessee of the property from Husky testified that after termination of his lease, he and his partner—Husky jobbers—looked after the vacant station and on occasion replaced the plate when it came loose. His deposition testimony was that the station was used by the public as parking and a turnaround. Itinerant vendors with consent were allowed to sell their wares on the station grounds. Appellants claimed that this former lessee was appellee's agent. Appellee denied that the jobber had ever been Husky's agent to look after the station and whatever he did was gratuitous.

The Division Engineer for Husky Oil denied knowledge of the use of the station for parking, a turnaround, and for selling of goods. He admitted he had no responsibility for upkeep of the station after closure and that "no trespassing" signs had not been posted. There were no barriers and no warning signs were posted.

II

The trial court, in finding for Husky, based its decision on *Maher v. City of Casper*, 67 Wyo. 268, 219 P.2d 125 (1950). There, this court approved the doctrine that while acquiescence in the presence of trespassers on one's property may be evidence of a license to be there, it does not constitute an invitation and the owner of land has no duty to a trespasser or licensee to maintain the premises in a safe condition for their use. It was further held in Maher that when strangers enter upon another's

land, they take it as they find it. They cannot assume that the owner has made it safe for persons so entering and they must accept the danger arising from the condition of the premises. This court did limit this rule by recognizing that the owner may not wantonly injure trespassers and licensees.

■ Appellants ask us to now set aside that precedent and follow what they consider to be a developing trend to abolish common-law classifications of trespasser, licensee and invitee and establish a uniform standard of reasonable care under the circumstances. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." 2 Restatement of Torts 2nd, § 329. "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." 2 Restatement of Torts 2nd, § 330. "(1) An invitee is either a public invitee or a business visitor. (2) A public invitee is a person who in invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." 2 Restatement of Torts 2nd, § 331.

The leading case representing the view of appellants is *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), 32 A.L.R.3d 496, where the court decided that the exceptions to the classic common-law rules enunciated by this court in Maher do not reflect the major factors which should determine whether immunity should be conferred upon the possessor of land. It accordingly adopted as its rule:

" * * * The proper test to be applied to the liability of the possessor of land in accordance with section 1714 [2] of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." 70 Cal.Rptr. at 104, 443 P.2d at 568.[3]

Appellants also point to Annotation, "Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser," 32 A.L.R.3d 508, where it is stated that there is a general trend toward elimination of technical status positions which insulate certain classes from liability and to substitute the broad test of reasonable care under the circumstances. The author of the annotation then concludes that "[s]imilar forces seem to be at work in the field of premises liability," Id., 70 Cal.Rptr. at 110, 443 P.2d at p. 514; then, after considerable academic discussion, discloses that "[t]here are only a few cases which squarely reject the traditional distinction between trespassers, licensees, and invitees as the controlling test in determining the scope and extent of the

---

**2.** The California court was able to hang its hat on this statutory provision which provides:
"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. * * * *"
The court noted that this statute states a civil law and not a common-law principle. 70 Cal. Rptr. 99, 443 P.2d at 563.

**3.** Courts followed the *Rowland* philosophy are represented in the following cases: *O'Leary v. Coenen*, N.D., 251 N.W.2d 746 (1977); *Cates v.*

*Beauregard Electric Cooperative, Inc.*, La., 328 So.2d 367 (1976)(under statute similar to that of California); *Ouellette v. Blanchard*, 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller*, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975); *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971); *Pickard v. City and County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969); *Smith v. Arbaugh's Restaurant, Inc.*, 152 U.S.App.D.C. 86, 469 F.2d 97 (1972). This list may not be exhaustive.

duty of care owed by landowners to entrants." Id., 70 Cal.Rptr. at pp. 116–117, 443 P.2d at pp. 520–521.

Examination of the last supplement to that annotation issued in August 1980, does not disclose any general clamor and hasty willingness of the highest state courts to jump on a bandwagon of agreement. What appears is a pronounced reticence to reject the traditional distinctions between trespassers, licensees and invitees and a recognition of the continued viability of those distinctions. The so-called "trend" to abolish or alter land occupancy classifications continues to be the minority position in this country.

The following cases from the appellate courts of states as noted particularly reject any notion of abandoning the common-law rule: *Whaley v. Lawing*, Ala., 352 So.2d 1090 (1977); *McMullan v. Butler*, Ala., 346 So.2d 950 (1977) (noted "trend" is still minority); *Post v. Lunney*, Fla., 261 So.2d 146 (1972) (applies new rule only to invitees, not trespassers or licensees toward whom occupier must not be wilfully or wantonly negligent); *Epps v. Chattahoochee Brick Co.*, 140 Ga.App. 426, 231 S.E.2d 443 (1976) (no liability to licensee, summary judgment approved); *Ramsey v. Mercer*, 142 Ga.App. 827, 237 S.E.2d 450 (1977) (no liability to a social guest as licensee in absence of wilful and wanton conduct and summary judgment proper); *Rehwalt v. American Falls Reservoir Dist. # 2*, 97 Idaho 634, 550 P.2d 137 (1976); *Springer v. Pearson*, 96 Idaho 477, 531 P.2d 567 (1975) (Idaho refuses to abolish legal categories of licensee, invitee and trespasser in favor of a general negligence standard); *Gartley v. Chicago Housing Authority*, 28 Ill.App.3d 705, 329 N.E.2d 252 (1975) (court upheld dismissal of complaint for failure to state a cause of action because it failed to allege status of occupier of land; specifically rejected duty of reasonable care as standard, as promoted by legal writers and a few states); *Champlin*

*v. Walker*, Iowa, 249 N.W.2d 839 (1977) (plaintiff after dark fell in unlighted and unguarded excavation on defendant's property; held no landowner's duty in the absence of wanton conduct toward trespasser); *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978) (court refused to jettison traditional classifications of trespassers, licensees and invitees; occupiers of land not liable to trespassers or licensees in absence of wilful and wanton conduct; court sees no valid reason to lower standard of care); *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978) (while court did not think question was properly before it, it nevertheless reviewed the entire status of trespasser, licensee and invitee law and concluded that Maryland was with the majority of jurisdictions which adhere to the common-law classifications as the essential element determinant of the occupier's liability); *State ex rel. Northwest Airlines v. District Court of Eighth Judicial Dist.*, 167 Mont. 464, 539 P.2d 714 (1975) (court reaffirmed that distinctions between invitee, licensee and trespasser still exist in Montana and when a person enters another's property for his own pleasure, convenience or benefit, he is a licensee to whom owner owes duty only to refrain from wilful and wanton negligence); *Moore v. Denune & Pipic, Inc.*, 26 Ohio St.2d 125, 55 Ohio Ops.2d 237, 269 N.E.2d 599 (1971) (court declined invitation to disregard traditional classifications and adopt rule of ordinary care); *Crotty v. Reading Industries, Inc.*, 237 Pa. Super. 1, 345 A.2d 259 (1975) (court recognized that common-law status of entrant remains a viable concept); *Copeland v. Larson*, 46 Wis.2d 337, 174 N.W.2d 745 (1970) (recognized "tendency" but did not indicate inclination to change).[4] The foregoing list of cases preserving common-law concepts may not include all cases but is substantially representative of substantial resistance to change. The position taken by this court in Maher appears to still represent a healthy following in this country.

---

4. See also, *Alston v. Baltimore & Ohio Railroad Co.*, U.S.D.C. D.C., 433 F.Supp. 553 (1977) where the court outlined the problems involved in attempting to chuck the common-law classifications and refused to abandon them; *Mercy Regional Medical Center v. Doiron*, Miss., 348 So.2d 243 (1977) (business invitee); *Andrews v. Taylor*, 34 N.C.App. 706, 239 S.E.2d 630 (1977).

Some states, including Wyoming, have adopted landowner liability acts, pertaining to use of land for recreational purposes. Sections 34–19–101 through 34–19–106, W.S.1977. It was adopted as "[A]n act to encourage landowners to make land and water areas available to the public by limiting liability in connection therewith." Ch. 9, Session Laws of Wyo., 1965. This is the only action taken by the Wyoming legislature to fix standards of care and liability of landowners and is not applicable in the case before us.

We conclude that the common-law principles enunciated in Maher, supra, are still acceptable. Our research indicates that Justice Blume in that case carefully outlined the prevailing common-law rules. While Prosser, in his work on Torts (4th Ed. 1971) favors the abolition of the categories of trespasser, licensee or invitee, § 62, pp. 398–399, he nevertheless acknowledges that the prevailing law is that, with respect to a trespasser, a possessor is not liable for injury to trespassers caused by his failure to exercise reasonable care to put his land in a safe condition for them nor to guard against concealed pitfalls, § 58, pp. 357–358, except that there may be liability for " 'wilful or wanton' injury to a trespasser," p. 362. A licensee as one who enters for his own purposes with consent, express or implied, is according to Prosser a "bare" or "naked" licensee and has no right to demand that the land be made safe for his reception and must in general assume the risk of whatever he may encounter. "Among the more common classes of persons who enter with nothing more than consent are those taking short cuts across the property or making merely permissive use of crossings and ways or other parts of the premises * * *," Id. at § 60, p. 377, and "it it generally agreed that the mere toleration of continued intrusion where objection or interference would be burdensome or likely to be futile * * * is not in itself and without more a manifestation of consent." Id. at p. 378.[5]

Under the common-law approach persons who use the property of others as a shortcut have been given short shrift by the courts. In Baird v. Goldberg, 283 Ky. 558, 142 S.W.2d 120 (1940), a store owner was held not liable for injuries to a pedestrian who took a shortcut through and fell over a scale located in an open triangular vestibule in front of the entrance to a store located on a corner. The vestibule formed a short passage between intersecting streets. The case was decided on the theory that pedestrians who, although without objection from the store owner, used the vestibule purely for their own convenience, as distinguished from customers or prospective customers, were mere "licensees" toward whom the store owner had the duty merely not to wilfully or wantonly injure, and were not "invitees" for whose use the premises were required to be kept reasonably safe. In Bruno v. Seigel, Fla., 73 So.2d 674 (1954), a plaintiff slipped and fell on a grease spot found on a concrete area of defendant's filling station while walking across the premises as a shortcut to a public bus stop. The accident occurred early in the morning before defendant's premises were open for business. The court found the plaintiff to be a licensee, and concluded that the defendant owed him no duty except not to harm him wilfully or wantonly, or to set traps for him, or to expose him to danger recklessly or wantonly.

As said in Stewart v. Texas Co., Fla., 67 So.2d 653 (1953), mere licensees are about the least favored in law of persons who are not actual wrongdoers; an owner or occupant owes one he permits to enter for the latter's convenience no duty except not to harm him wilfully or wantonly or to set traps for him, or to expose him to danger recklessly or wantonly. In Stewart, the plaintiff entered a service station for the purpose of obtaining change for a $10.00 bill. She slipped on a greasy spot, fell and

**5.** See also 4 Blashfield Automobile Law and Practice, § 181.6, p. 534 (3rd Ed. 1965) where it is said that, "[a]s a general rule persons entering voluntarily on the premises of another, out of idle curiosity or for their own pleasure or advantage, take the premises as they find them, and the owner or occupier thereof is bound only to avoid wanton or willful injury * * *."

injured herself. The court held that generally speaking a mere licensee when entering a premises assumes whatever risk there may be in the condition of premises.

In *Hamilton v. Brown,* 157 W.Va. 910, 207 S.E.2d 923 (1974), plaintiff took a shortcut on a path over defendant's property which led him across a small stream via a footbridge. In crossing the footbridge, a concrete slab gave way causing him to fall in the stream and be injured. The owner never gave permission to anyone to use the path and bridge, though apparently it was in common use. The court held:

> " 'Mere permissive use of the premises, by express or implied authority ordinarily creates only a license.' [Citation.] As to a licensee, the law does not impose upon the owner of property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all the dangers attending such entry. [Citations.]" (Citations omitted in original.)

■ Appellant Mrs. Yalowizer was a trespasser and at the most a licensee and not entitled to any relief as a matter of law under the undisputed facts of this case. Summary judgment for appellee was proper.

■ In the light of our disposition, there appearing to be no wilful and wanton conduct [6] by appellee, we do not consider other questions presented.

Affirmed.

---

**6.** The usual meaning of wilful and wanton misconduct is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must have been aware of it and so great as to make it obvious that harm would follow. It is usually accompanied by a conscious indifference to the consequences amounting to a willingness that they shall follow. Prosser Torts (4th Ed. 1971), § 34, p. 185. Wilful and wanton conduct is not in the strict sense negligence since it involves intent, not inadvertence. *Danculovich v. Brown,* Wyo., 593 P.2d 187, 193 (1979).